

**U.S. Department of Justice**

*Carmen M. Ortiz*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

September 9, 2014

BY REGULAR MAIL

Jonathan Shapiro
Stern, Shapiro, Weissberg & Garin, Suite 500
90 Canal Street
Boston, MA 02114

     Re:  <u>United States v. Stephen Silva</u>;
           Cr. No. 14-10210-MLW

Dear Mr. Shapiro:

Pursuant to Rule 116.1 of the Local Rules of the United States District Court for the District of Massachusetts, the government hereby provides you with the following automatic discovery in the above-referenced case.

A.   <u>Rule 16 Materials</u>

   1.   <u>Statements of Defendant under Rule 16(a)(1)(A)</u>

      a.   <u>Written Statements</u>

There are no relevant written statements of the defendant, Stephen Davis (hereinafter the "defendant"), in the possession, custody, or control of the government.

      b.   <u>Recorded Statements</u>

As you know, consensual audio and video tape-recordings were made of personal meetings and telephone conversations involving the defendant and a cooperating witness ("CW-1") and an undercover law enforcement officer ("UC-1"). Several of the pertinent video and audio recordings in this case were forwarded

to you by memorandum dated July 25, 2014.  Additional pertinent video and audio recordings in this case will be forwarded to you under separate cover along with a tape index.

To date, draft transcripts of some of these tapes have been prepared and were provided to you by the memorandum dated July 25, 2014.  In addition, summaries of some of the recorded conversations have been prepared as part of the FBI reports which were previously provided to you by memorandum dated August 14, 2013, as part of Bates Numbered documents 1-256.  Additional FBI reports with similar summaries, and other documents, will be forwarded to you under separate cover.

c.   <u>Grand Jury Testimony of the defendant</u>

The defendant did not testify before the grand jury in connection with this case.  As you know, the defendant was called before a federal grand jury over a year ago in connection with another matter and invoked his Fifth Amendment rights.

d.   <u>Oral Statements to then Known Government Agents</u>

Other than booking statements referenced in the preceding paragraph and other statements that may be referenced in the reports produced and to be produced in this matter, I am presently unaware of any oral statements made by the defendant before or after arrest, in response to interrogation by a person then known by the defendant to be a government agent, which the government intends to use at trial.  If I become aware of any such statements, I will advise you at once.

2.   <u>Defendant's Prior Record under Rule 16(a)(1)(B)</u>

I understand that you received a copy of the prior criminal record of the defendant from Pretrial Services.  Please contact me if you need a duplicate copy.

3.   <u>Documents and Tangible Objects under Rule 16(a)(1)(C)</u>

All books, papers, documents and tangible items that are within the possession, custody, and control of the government, and which are material to the preparation of the defendant's defense, or are intended for use by the government as evidence in chief at the trial of this matter, or were obtained from or belong to the defendant, may be examined by contacting the undersigned Assistant United States Attorney and making an appointment to view the same at a mutually convenient time.

4.   Reports of Examinations and Tests under Rule
16(a)(1)(D)

Copies of some DEA-7 laboratory reports relating to the
drugs purchased from the defendant have been produced as part of
Bates Number documents 1-256.  Any additional DEA laboratory
reports received after the date of this letter will be forwarded
to you upon receipt.

Copies of reports of examinations and tests regarding the
firearm seized in this case were previously produced as part of
Bates Number documents 1-256.  Any additional reports regarding
the firearm received after the date of this letter will be
forwarded to you upon receipt.

Should we be unable to reach a stipulation as to the
results of the examination of the drugs and gun seized in this
case, the government plans to offer testimony concerning the
results of the laboratory analysis of the drug exhibits (i.e.,
that they are heroin) and the testing of the firearm (i.e., that
it is a firearm within the meaning of federal law and satisfies
the interstate commerce requirement).

B.   Search Materials under Local Rule 116.1(C)(1)(b)

On July 21, 2014, a federal search warrant was executed at
812 Memorial Drive, Apt. 1804, Cambridge, MA, the residence of
Stephen Silva.  Copies of the search warrant, affidavit,
application, and return are enclosed herewith.  Any items seized
at the time of any search or seizure, and any items seized from
the defendant at the time of his arrest, may be examined by
appointment in accordance with paragraph 3 above.  The
government is not in possession of reports related to the
seizures of evidence in this case that it anticipates offering
in its case-in-chief beyond those items otherwise described in
and enclosed with this letter, or in the Bates Numbered
documents previously produced.

C.   Electronic Surveillance under Local Rule 116.1(C)(1)(c)

No oral, wire or electronic communications of your client
were intercepted by the government in connection with this case
pursuant to 18 U.S.C. §§ 2510-2518.

D.    Consensual Interceptions under Local Rule 116.1(C)(1)(d)

As discussed above, this case involved the use of consensual monitored meetings and conversations that were recorded.  Summaries of some conversations have been prepared (and, as is indicated above, have been produced) and draft transcripts have also been produced.  Any additional summaries and/or transcripts that are prepared will be made available to you in accordance with Local Rule 116.4(B).  Although not required by Local Rule 116.1(C)(1)(d)(i), the government has also produced, at Bates Number 1-256, documents relating to these consensual recordings and other contacts with the defendant concerning the offenses described in the Indictment.

E.    Unindicted Coconspirators under Local Rule 116.1(C)(1)(e)

The reports previously produced in this matter indicate that the defendant was working in concert with other individuals in connection with his trafficking activities surrounding and including the transactions described in the Indictment.  The government declines to identify those individuals at this time, pursuant to LR 116.6(A), and notes that certain information has been redacted from the reports provided herein.  Without waiving that declination as to the identity of certain of these information concerning unindicted co-conspirators can be found in the reports previously produced and to be produced in this matter.

F.    Identifications under Local Rule 116.1(C)(1)(f)

There were several kinds of identification procedures used in the course of this investigation.  In addition to traditional photographic arrays and identifications made by surveillance agents who were personally familiar with targets of the investigation, agents working on the case frequently reviewed videos of controlled purchases and compared the image of the individual on the video to booking, Registry of Motor Vehicle, or other photographs of suspected targets.  This occurred with the defendant in this case.  All such procedures of which I am aware are described in the FBI reports previously produced as Bates numbered documents 1-256 and those to be produced under separate cover.

G.   Exculpatory Evidence under Local Rule 116.2

With respect to the government's obligation under Local Rule 116.2(B)(1) to produce "exculpatory evidence," as that term is defined in Local Rule 116.2(A), the government states as follows:

1.   The government is unaware of any information that would tend directly to negate the defendant's guilt concerning any count in the indictment.

2.   The government is unaware of any information that would cast doubt on the admissibility of evidence that the government anticipates offering in its case-in-chief and that could be subject to a motion to suppress or exclude.

3.   The drug purchases made from the defendant in this case were made by the CW described in paragraph A.1.b., above. Other than CW-1, no promises, rewards, or inducements have been given to any witness whom the government presently anticipates calling as part of its case in chief.

CW-1 was at one time a member of a violent street gang.  At the time CW-1 started cooperating, CW-1's relative was facing federal drug and firearm charges.  CW-1's relative, who has also cooperated with the government, has pled guilty to those charges pursuant to a standard cooperation agreement with the U.S. Attorney's Office.  The government has advised CW-1 that CW-1's cooperation will be brought to the attention of the sentencing judge in connection with the sentencing of CW-1's relative.  On numerous occasions, at the government's request, the sentencing of CW-1's relative has been continued.

Prior to the date of this letter, CW-1 received a total of approximately $66,025 from the government in connection with its involvement in this and other investigations.  This total includes payments for services, expenses, and relocation (some of this money was used by CW-1 to pay vehicle related fines). At the time he started cooperating, CW-1's driver's license had been suspended from various driving offenses.  CW-1 was subsequently pulled over for speeding in New Hampshire.  CW-1 called Trooper Mario Millett, who is also a member of the FBI's North Shore Gang Task Force, and Trooper Millett spoke with the New Hampshire state trooper who had stopped CW-1 and advised the

trooper of CW-1's cooperation.  CW-1's car was towed but the trooper did not issue CW-1 any citations for speeding or driving without a license.  The FBI subsequently helped CW-1 get a so-called "Cinderella" license (i.e., a license that allowed CW-1 to drive during daylight hours).  In that connection, Trooper Millett wrote an e-mail to the State Police Community Driver's Licensing Section on CW-1's behalf.  A redacted copy of that letter is attached hereto.

FBI paid an outstanding fine that CW-1 had with a prior landlord, which amount is included in the above figure, so that CW-1 could obtain Section 8 housing.  FBI offered to provide CW-1 with a letter in support of its Section 8 housing application, which offer was declined by CW-1 because CW-1 was already at the top of the list; CW-1 subsequently received Section 8 housing without assistance from the FBI.

During the period of CW-1's proactive cooperation, CW-1 was arrested for failure to pay a civil fine for child support.  An ATF agent called a Massachusetts Department of Revenue attorney and asked if DOR would agree to release CW-1, which DOR declined to do.  Neither the FBI nor ATF provided any other assistance with this matter.

The government has helped CW-1 and its family relocate, which payments are included in the amount above, and has also advised CW-1 that it will provide it with further assistance necessary to ensure the safety of CW-1 and its family.

Pursuant to Local Rule 116.6(A), the government declines to disclose at this time the identity of CW-1.  The government believes that such a disclosure would be detrimental to the interests of justice.  The government takes the position that the exposure of the identity of CW-1 would put its safety and the safety of its family in jeopardy.  The government is prepared to identify CW-1 at a reasonable time before trial.

4.    Other than CW-1, the government is unaware that any of its named case-in-chief witnesses has a criminal record.  A redacted copy of the criminal record of CW-1 is enclosed herewith.

   5.    No named percipient witnesses failed to make a
positive identification of a defendant with respect to the crime
at issue.

H.    Other Matters

   The government recognizes that its duty of disclosure and
discovery as set forth in Local Rule 116 and Rule 16 of the
Federal Rules of Criminal Procedure is a continuing one.   In
addition, please consider this letter to be a request for
reciprocal discovery pursuant to Local Rule 116.1(D) and Fed. R.
Crim. P. 16(b).   I request that you provide a written response
to my request for reciprocal discovery within 10 days of receipt
of this letter.

I.    Request for Alibi Information

   Pursuant to Fed. R. Crim. P. 12.1, the government hereby
requests notice of any intention to offer an alibi defense to
the charged offense or any of the meetings or conversations
described in the Bates numbered documents produced herewith.

   Please do not hesitate to contact me if you have any
questions about this or any aspect of discovery or wish to
discuss this case.

                            Very truly yours,

                            CARMEN M. ORTIZ
                            United States Attorney

                    By:    _____
                            PETER K. LEVITT
                            Assistant U.S. Attorney

Enclosures


cc (w/out encl.):    Brendan Garvin, Courtroom Clerk to
                     the Honorable Marianne B. Bowler